THE AMERICAN TRADING CO. v. MONSERRAT.

APELACIÓN procedente de la Corte de Distrito de Ponce.

No. 748.—Resuelto en abril 20, 1912.

INJUNCTION—SUSPENSIÓN DEL PROCEDIMIENTO HIPOTECARIO.—Hasta que empezó a regir la Ley de *Injunction* de 1906, y aun con anterioridad, este tribunal había resuelto que el procedimiento hipotecario no debe suspenderse a no ser por alguno de los motivos taxativamente mencionados en el artículo 175 del Reglamento de la Ley Hipotecaria.

ID.—MULTIPLICIDAD DE PROCEDIMIENTOS JUDICIALES.—El verdadero sentido de las palabras ''para impedir una multiplicidad de procedimientos judiciales'' de la Ley de *Injunction* de 1906, es el evitar que una o varias partes establezcan acciones diversas sobre la misma cuestión, pero no el colocar a un deudor en condiciones de impedir que sus acreedores lo demanden. No sería justo o legal que se concediera un *injunction* para impedir únicamente que varias personas establezcan reclamaciones que *prima facie* son válidas, contra una. misma propiedad.

ID.—DEUDOR—SUSPENSIÓN DEL PROCEDIMIENTO SUMARIO—INTENCIÓN DE LA LEGISLATURA.—No es posible creer que la legislatura tuvo la intención de permitir que un deudor obtuviera por medio del *injunction* lo que de otro modo no podría conseguir, cual es suspender un procedimiento ejecutivo contra él. Ese remedio lo tiene por la vía ordinaria anotando la demanda en el registro de la propiedad.

ID.—INTERPRETACIÓN DE LEY—LEY HIPOTECARIA—LEY DE INJUNCTION—DEROGACIONES TÁCITAS.—Es un principio general de interpretación de ley que las derogaciones tácitas no merecen por lo general la sanción de los tribunales. La Ley de *Injunction* de marzo 8, 1906, no ha derogado el artículo 175 del Reglamento de la Ley Hipotecaria.

Los hechos están expresados en la opinión.

Abogados del apelante *Sres. Felipe Casalduc y Emidgio S. Ginorio.*

Abogado del apelado: *Sr. Alfredo Arnaldo Sevilla.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Por escritura de fecha mayo 11, 1900, Luis Arán y Lancy reconoció estar adeudando a Baudilio Durán y Cat la suma de 130,000 pesos moneda provincial, obligándose a pagarlos a razón de $13,000 cada día 11 de mayo de los años 1901, e igual suma cada día once de mayo de los sucesivos años, con sus intereses al seis por ciento anual; por cada uno de esos plazos otorgó un pagaré a la orden de su acreedor Baudilio Durán y en garantía de esos pagarés trasmisibles por endosos constituyó hipoteca voluntaria sobre diez y nueve fincas rústicas. En esa hipoteca no se pactó que los plazos de la misma tuvieran preferencia de ninguna clase entre ellos, ni que los unos fueran considerados como créditos de cobro preferente respecto de los otros.

Don Baudilio Durán endosó a la orden de Martín Serra el pagaré número tres (3) que era el que vencía en mayo 11, 1903; y éste a su vez lo endosó a The American Trading Company.

De igual modo Baudilio Durán endosó el pagaré número cinco a la orden de Conrado Palou, y este último a otra persona, pero estos endosos fueron cancelados y se endosó el pagaré a Damián Monserrat, que es el apelado en este pleito. Este último endoso es uno de los puntos que ha sido objeto de impugnación en esta apelación, tanto con motivo del primer endoso, como por la forma de dicho endoso, y alega el apelante que el traspaso no es válido por no expresarse en el endoso la fecha de dicho traspaso. The American Trading Co. siguió un procedimiento sumario hipotecario

contra la administradora judicial de los bienes de Luis Arán y Lancy para el cobro de su pagaré No. 3, dando por resultado estos procedimientos que se la adjudicaran a dicho apelante en pago parcial de dicho pagaré seis parcelas de terreno.

Para cobrar su pagaré número 5, presentó Damián Monserrat una demanda por el procedimiento sumario de la ley hipotecaria contra The American Trading Co. que era quien se encontraba en posesión de las fincas. Se señaló la subasta de dichas fincas para el día 22 de julio, 1911, y en junio de 1911, dicha American Trading Co. presentó su solicitud de *injunction* objeto de esta apelación.

En la demanda se alega que por una omisión involuntaria se dejó de solicitar en el procedimiento sumario de la ley hipotecaria seguido por la American Trading Co., que se dictara una orden para que se cancelaran en el registro los otros gravámenes que pesaban sobre las seis fincas. No se estableció ningún pleito por la vía ordinaria, ni se trató de cumplir con el artículo 175 del reglamento hipotecario.

Alegó el apelante, y sostiene entre otras cosas, que de permitirse que continuara el procedimiento sumario hipotecario se le ocasionarían daños y pérdidas de consideración e irreparables que darían lugar á pleitos innecesarios por sí mismo y a una multiplicidad de acciones por parte de los tenedores de otros pagarés. El apelante alega varios motivos de nulidad del título de Monserrat en apoyo de la facultad que tiene la corte para decretar el *injunction*. El apelado alega por otra parte que con arreglo al artículo 175 del Reglamento Hipotecario, un procedimiento sumario no puede suspenderse por ninguna causa sino por las que se enumeran en dicho artículo, no apareciendo entre ellas las causas o la clase de procedimiento que el apelante sostiene está comprendido en esta acción.

Hasta que se aprobó la ley de *injunction* en 1906, y con anterioridad a dicha fecha, este tribunal ha resuelto que no debe suspenderse el procedimiento hipotecario excepto por

los motivos que se determinan en el artículo 175 del Reglamento de la Ley Hipotecaria. (*Banco Territorial y Agrícola* v. *Erwin,* 10 D. P. R., 412; *Giménez* v. *Brenes,* 10 D. P. R., 128.) Se alega no obstante, que siendo la ley de *injunction* de marzo 8, 1906, de fecha posterior a la Ley Hipotecaria o a su reglamento, deroga a estas últimas. Con arreglo a esa ley un *injunction* puede decretarse para impedir una multiplicidad de procedimientos judiciales, pero creemos que el verdadero sentido de esas palabras es impedir que una o varias partes establezcan diferentes acciones sobre la misma cuestión y no, por ejemplo, que un deudor esté en condiciones de impedir que sus distintos acreedores lo demanden. Un acreedor no puede establecer una acción sobre nulidad, reivindicación o desahucio, todas al mismo tiempo; ni puede repetir la misma acción. Sin embargo, aun admitiéndose que pueda decretarse un *injunction* para evitar una multiplicidad de acciones, no sería justo o legal que se decretara con el solo objeto de impedir que diferentes personas establezcan reclamaciones que *prima facie* son válidas contra la misma propiedad. Además, aquí no se ha demostrado que nadie sino el demandado esté ejercitando alguna acción. En ningún otro caso debe decretarse un *injunction* para impedir procedimientos judiciales, pues el artículo 4 de la Ley de *Injunction* prescribe de modo terminante que "no podrá otorgarse un *injunction*: 1. Para suspender un procedimiento judicial que se estuviere tramitando al instituirse la acción en que se solicita el *injunction*, a menos que la restricción fuere necesaria para impedir una multiplicidad de tales procedimientos."

Por otra parte no creemos que fué la intención de la Legislatura el permitir que un deudor obtuviera por medio del *injunction* lo que de otro modo no podría obtener, o sea, suspender un procedimiento sumario. Su remedio lo tiene por la vía ordinaria anotando la demanda en el registro de la propiedad. La misma Ley Hipotecaria prescribe en su artículo 413, lo siguiente:

"\* \* \*. Ninguno de los artículos que componen esta ley podrá ser derogado sino en virtud de otra ley especial, no pudiendo tener este carácter en caso alguno la de presupuesto."

Además de esta declaración legislativa de las reglas para la interpretación y estabilidad de la Ley Hipotecaria y su Reglamento, existe también el conocido principio de interpretación de estatutos, de que las derogaciones tácitas no merecen ordinariamente la sanción de las cortes. (*North American Com. Co.* v. *U. S.*, 171 U. S., 131.) En la ley de marzo 8, 1906, con respecto a *injunction,* no existía ninguna cláusula derogatoria. Por otra parte la ley de marzo 9, 1905, sobre procedimientos especiales contenía una cláusula en la que se disponía que continuarían en vigor la Ley Hipotecaria y su reglamento, por lo que se hace imposible creer que la misma legislatura en 1906, hubiera tenido alguna intención de derogar tácitamente lo que expresamente estatuyó en el año anterior. De igual modo se sostuvo que el artículo 50 del Código de Enjuiciamiento Civil había derogado el procedimiento especial hipotecario, pero este tribunal ha resuelto en el caso de *Giménez* v. *Brenes,* 10 D. P. R., 128, citado anteriormente, que no quedó derogado.

Por las razones expresadas debe confirmarse la sentencia.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro y Aldrey.

Juez disidente: Sr. MacLeary.